**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

LEI GAO, *individually on behalf of*
*all others similarly situated,*

               Case No:

          Plaintiff,

     v.           **COLLECTIVE ACTION**
                **COMPLAINT**

KERRY NAILS SALON CORPORATION
d/b/a Kerry Nail Spa, Xue Gou, and Tie Ming
Xu,

         Defendants,
-----------------------------------------------------------------X

    Plaintiff Lei Gao ("Plaintiff"), individually and on behalf of all others similarly situated,

by and through his attorneys, Hang & Associates, PLLC, hereby bring this complaint against

Defendants KERRY NAILS SALON CORPORATION d/b/a Kerry Nail Spa, Xue Gou, and Tie

Ming Xu (collectively "Defendants") and alleges as follows:

## INTRODUCTION

    1.   This action is brought by Plaintiff, on behalf of himself as well as other employees

similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act,

("FLSA") 29 U.S.C. §§ 201 *et seq.*, and of New York Labor Law §§190 et seq. ("NYLL"), arising

from Defendants' various willful and unlawful employment policies, patterns and/or practices.

    2.   Upon information and belief, Defendants have willfully and intentionally

committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to pay their employees, including Plaintiff, compensation for all hours worked, overtime

compensation for all hours worked over forty (40) each workweek, spread of hours, unlawful

withholding of wages, as well as failing to provide their employees, including Plaintiff, with wage notice at the time of hiring and wage statements.

3.    Plaintiff alleges pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs;

4.    Plaintiff further alleges pursuant to NYLL §190 et seq. and Title 12 of New York Codes, Rules and Regulations Part 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) unpaid spread of hours, (3) unlawful withholding of wages, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (4) liquidated damages equal to the sum of unpaid overtime pursuant to the NY Wage Theft Prevention Act; (5) prejudgment and post-judgment interest; and (6) attorney's fees and costs.

## JURISDICTION AND VENUE

5.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

7.    Plaintiff is an individual residing in Queens, New York.

8.      From in or around September 2016 to on or around October 30, 2018, Plaintiff was employed as a nail technician in Defendants' nail salon located at 236 E. Route 59, Nanuet, New York 10954.

## DEFENDANTS

*Corporate Defendant*

9.      Upon information and belief, Kerry Nails Salon Corporation d/b/a Kerry Nail Spa ("Corporate Defendant or Defendant Corporation") is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 236 E. Route 59, Nanuet, New York 10954.

10.     Upon information and belief, Corporate Defendant has about more than ten (10) employees.

11.     Upon information and belief, Corporate Defendant at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

12.      Upon information and belief, Corporate Defendant purchased and handled goods moved in interstate commerce. For instance, Corporate Defendant has employees who handled and worked on goods moved in commerce such as nail polish and supplies.

13.     At all times relevant times, Corporate Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

*Owner/ Operator Defendant*

14.     Upon information and belief, Defendant Xue Gou ("Defendant Gou") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated

in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

15.    Upon information and belief, Defendant Gou owns the stock of Defendant Corporation and manages and makes all business decisions regarding Defendant Corporation, including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work.

16.    Upon information and belief, Defendant Gou determined the wages and compensation of the employees of Defendants, including Plaintiff, and established work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

17.    Upon information and belief, Defendant Tie Ming Li ("Defendant Li") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

18.    Upon information and belief, Defendant Li manages and makes all business decisions regarding Defendant Corporation, including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work, establishing work schedules and work load of the employees, maintaining employee records, and had the authority to hire and fire employees.

19.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

20.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

21.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their nail salon locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

22.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

23.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

24.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

25.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

26.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

27.     Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF FACTS

28.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

29.     Defendants knew that the nonpayment of overtime pay, nonpayment of spread of hours, unlawful withholding of wages, as well as failure to provide the required wage notice at the time of hiring and the required wage statement with every payment of wages would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

### *Plaintiff Lei Gao*

30.     From in or around September 2016 to on or around October 30, 2018, Plaintiff was employed as a nail technician in Defendants' nail salon located at located at 236 E. Route 59, Nanuet, New York 10954.

31.     Upon information and belief, Defendant Li, known as "Boss" to Plaintiff, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

32.     Upon information and belief, Defendant Gou, known as "Lady Boss" to Plaintiff, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

33.     Defendant Gou and Defendant Li hired Plaintiff as a nail technician for Defendant Corporation.

34.     Defendant Gou and Defendant Li controlled and determined the work schedule of Plaintiff.

35.     Defendant Gou and Defendant Li determined the rates of compensation of Plaintiff methods of payment.

36.     Defendant Gou and Defendant Li handled wage payments to Plaintiff and maintained his employment records.

37.     Plaintiff was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

38.     Throughout his employment with Defendants, Plaintiff would take the company shuttle provided by Defendants at around 8:20 am in Flushing and arrive at Defendants' nail salon at or before 9:30 am, then take the company shuttle back to Flushing after the workday concludes. From in or around February 2017 to in or around June 2018, Plaintiff was also required by Defendants to drive the company shuttle on each Monday to pick up/drop-off Defendants' employees.

39.     From in or around September 2016 to in or around January 2017, Plaintiff worked 6 days per week and on each of his workday Plaintiff worked without a break from 9:30 am to around 7:40 pm (often until 8:00pm). Plaintiff therefore worked at least 10.17 hours per day, or 61.02 hours per week during this period of time. Plaintiff is therefore entitled to the spread of hours premium for this period of time.

40.     From in or around February 2017 to in or around June 2018, Plaintiff worked 6 days per week. On each Monday (the day Plaintiff was also required to drive) starting 8:20 am, Plaintiff would pick up Defendants' employees from Flushing, Queens and arrive at Defendants' nail salon at or before 9:30 am, then worked without a break from 9:30 am to around 7:40pm, thereafter drove Defendants' employees back to Flushing until 8:30pm (the time usually the last employee was dropped off). On other workdays of a week, Plaintiff worked without a break from 9:30 am to around 7:40 pm. Plaintiff therefore worked 12.17 hours on Mondays and 10.17 hours on other workdays (or 63.02 hours per week) during this period of time. Plaintiff is therefore entitled to the spread of hours premium for this period of time.

41.     From in or around July 2018 to on or around October 30, 2018, Plaintiff worked 6 days per week and on each of his workday Plaintiff worked without a break from 9:30 am to around 7:40 pm (often until 8:00pm). Plaintiff therefore worked at least 10.17 hours per day, or 61.02 hours per week during this period of time. Plaintiff is therefore entitled to the spread of hours premium for this period of time.

42.     During the year of 2016, Plaintiff was paid at a fixed rate $120.00 per day plus commission averaged at $25 per day, regardless the number of hours he actually worked each day.

43.     During the year of 2017, Plaintiff was paid at a fixed rate $125.00 per day plus commission averaged at $25 per day, regardless the number of hours he actually worked each day.

44.     From January 1, 2018 to October 30, 2018, Plaintiff was paid at a fixed rate $130.00 per day plus commission averaged at $25 per day, regardless the number of hours he actually worked each day.

45.     Throughout his employment with Defendants, Plaintiff was paid weekly through a combination of both cash and check, with the allocation of $200 in check and the rest amount in cash.

46.     Throughout his employment with Defendants, Plaintiff was not required to punch time or otherwise track his work hours. Nevertheless, Defendant required their employees, including Plaintiff, to fill out time-records, for a half year at once. Those time-records do not reflect the hours actually worked by employees, including Plaintiff. For instance, Plaintiff's time records usually state that he worked three days per week, whereas in fact Plaintiff worked 6 days per week.

47.     Throughout his employment with Defendants, Plaintiff was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws, nor was Plaintiff compensated for spread of hours pay for each day on which his spread of hours exceeds ten.

48.     Throughout his employment with Defendants, Plaintiff was not overtime-exempt under federal and state laws.

49.     Defendants did not provide Plaintiff with a correct wage statement with every wage payment.

50.     Defendants failed to pay Plaintiff his wage (in the amount of $130) for the last day of his work, i.e., October 30, 2018.

**STATEMENT OF CLAIMS**

## COUNT I

### [Violations of the Fair Labor Standards Act—Overtime Wage

### Brought on behalf of the Plaintiff and the FLSA Collective]

51.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

52.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

53.     The FLSA and supporting regulations provides that, abstract employment contract, commission paid on a weekly basis is added to the employee's other earnings for that workweek and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard. 29 C.F.R. § 778.118.

54.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

55.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime premiums violated the FLSA.

56.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and

Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

57.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

58.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

59.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II

### [Violation of New York Labor Law—Overtime Pay

### Brought on behalf of Plaintiff]

60.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

61.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

62.    Defendants' failure to pay Plaintiff his overtime premiums violated the NYLL.

63.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT III

### [Violation of New York Labor Law—Spread of Hours

### Brought on behalf of Plaintiff]

64.    The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 NYCRR § 137-1.7, 12 NYCRR 146-1.6 (effective 1/1/2011, formerly 12 NYCRR § 137-1.7), New York State Department of Labor Regulations § 137-1.7 provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in which the employee's spread of hours exceeds ten. This "spread of hours" regulation is applicable even if there is a split shift.

65.    Throughout his employment with Defendants, Plaintiff routinely worked a "spread of hours" of more than 10 hours per day.

66.    Despite the fact that Plaintiff routinely worked a "spread of hours" greater than ten hours per day throughout his employment with Defendants, Defendants did not pay Plaintiff any additional compensation as required by the regulations.

67.    Defendants' failure to pay spread of hours compensation was willful and intentional.

## COUNT IV

### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement

### Brought on Behalf of Plaintiff]

68.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

70.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

71.     Defendants not only did not provide notice to each employee at Time of Hire but also failed to provide notice to Plaintiff thereafter.

72.     Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT V

### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on Behalf of Plaintiff]

73.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

74.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

75.     Defendants have failed to make a good faith effort to comply with the New York

Labor Law with respect to compensation of Plaintiff and did not provide the paystub on or after

Plaintiff's payday.

76.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to

recover from Defendants, jointly and severally, $250 for each workday of the violation, up to

$5,000 for Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law

N.Y. Lab. Law §198(1-d).

**COUNT VI**

**[Violation of New York Labor Law —Failure to Pay Wages]**

77.    Plaintiff repeats and re-alleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

78.    Under NYLL §191, an employer is required to pay an employee within one week

of the services performed by the employee.

79.    Defendants failed to pay Plaintiff his wage as required by NYLL §191 by not

paying Plaintiff his wage for his last day of work in the amount of $130.00.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, respectfully
requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action,

or that the Court issue such notice, to all persons who are presently, or have up through

the extent allowable under the statute of limitations and including the date of issuance

of court-supervised notice, been employed by Defendants as non-exempt employees.

Such notice shall inform them that the civil notice has been filed, of the nature of the

action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    Award Plaintiff unpaid wages, unpaid overtime, and unpaid spread of hours due under the FLSA and the New York Labor Law;

g)    Award Plaintiff liquidated damages under the FLSA or the NYLL;

h)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL;

i)    The cost and disbursements of this action;

j)    An award of prejudgment and post-judgment fees; and

k)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York

November 9, 2018

Respectfully Submitted,

HANG & ASSOCIATES, PLLC


By: /s/ _ *Xiaoxi Liu*_____ ___
  Xiaoxi Liu, Esq.
  136-20 38th Ave. Suite 10G
  Flushing, NY 11354
  Tel: (718) 353-8588
  Fax: (718) 353-6288
  Email: xliu@hanglaw.com
  *Attorneys for Plaintiff and Proposed FLSA*
  *Collective*

# EXHIBIT A

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Kerry Nail Spa, Tiemin Xu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Lei Gao*

Full Legal Name (Print)

*Lei Gao*

Signature

11-8-2018

Date