**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
Lei Gao, Wen Tao Liu, and Shuai Sun,
*on behalf of themselves and all others*
*similarly situated,*

                                 Plaintiffs,

                v.

KERRY NAILS SALON CORPORATION,
d/b/a Kerry Nail Spa, Xue Gou, and Tie Ming
Xu,

                              Defendants.
----------------------------------------------------------------X

Case No: 18-cv-10448

**FIRST AMENDED**
**COMPLAINT**

      Plaintiffs Lei Gao, Shuai Sun, Wen Tao Liu ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned attorneys, hereby bring this First Amended Complaint against Defendants Kerry Nails Salon Corporation, d/b/a Kerry Nail Spa (hereinafter "Kerry Nail Spa"), Xue Gou, and Tie Ming Xu (collectively "Defendants") and allege as follows:

**INTRODUCTION**

      1.    This action is brought by Plaintiffs, on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. §§ 201 *et seq.*, and of New York Labor Law §§190 et seq. ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

      2.    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to pay their employees, including Plaintiffs, compensation for all hours worked, overtime compensation for all hours worked over forty (40) each workweek, spread of hours, unlawful withholding of wages, as well as failing to provide their employees, including Plaintiffs, with wage notice at the time of hiring and wage statements.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs;

4.      Plaintiffs further allege pursuant to NYLL §190 et seq. and Title 12 of New York Codes, Rules and Regulations Part 142 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) unpaid spread of hours, (3) unpaid minimum wages, (4) unlawfully withheld wages, (5) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (6) liquidated damages equal to the sum of unpaid overtime pursuant to the NY Wage Theft Prevention Act; (7) prejudgment and post-judgment interest; and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.       Plaintiff Lei Gao (hereinafter "Gao") is an individual residing in Queens, New York.

8.       Plaintiff Wen Tao Liu (hereinafter "Liu") is an individual residing in Queens, New York.

9.       Plaintiff Shuai Sun ("Sun") is an individual residing in Queens, New York.

10.      From in or around September 2016 to on or around October 30, 2018, Plaintiff Gao was employed as a nail technician in Defendants' nail salon located at 236 E. Route 59, Nanuet, New York 10954.

11.      From in or around April 2017 to July 2018, Plaintiff Liu was employed as a manicure and pedicure assistant in Defendants' nail salon located at 236 E. Route 59, Nanuet, New York 10954.

12.      From in or around September 2016 to on or around October 30, 2018, Plaintiff Sun was employed as a nail technician in Defendants' nail salon located at 236 E. Route 59, Nanuet, New York 10954.

## DEFENDANTS

*Corporate Defendant*

13.      Upon information and belief, Kerry Nails Salon Corporation d/b/a Kerry Nail Spa is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 236 E. Route 59, Nanuet, New York 10954.

14.      Upon information and belief, Corporate Defendant has about more than ten (10) employees.

15.     Upon information and belief, Corporate Defendant at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

16.     Upon information and belief, Corporate Defendant purchased and handled goods moved in interstate commerce. For instance, Corporate Defendant has employees who handled and worked on goods moved in commerce such as nail polish and supplies.

17.     At all times relevant times, Corporate Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

### Owner/ Operator Defendant

18.     Upon information and belief, Defendant Xue Gou ("Defendant Gou") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

19.     Upon information and belief, Defendant Gou owns the stock of Defendant Corporation and manages and makes all business decisions regarding Defendant Corporation, including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work.

20.     Upon information and belief, Defendant Gou determined the wages and compensation of the employees of Defendants, including Plaintiff, and established work schedules

and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

21.     Upon information and belief, Defendant Tie Ming Xu ("Defendant Xu") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

22.     Upon information and belief, Defendant Xu manages and makes all business decisions regarding Defendant Corporation, including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work, establishing work schedules and work load of the employees, maintaining employee records, and had the authority to hire and fire employees.

23.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

24.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiffs bring this action on behalf of themselves and all other and former non-exempt employees who have been or were employed by the Defendants at their nail salon locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action

Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

26.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

27.    This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

28.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

29.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

30.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

31.     Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF FACTS

32.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

33.     Defendants knew that the failure to pay at least minimum wage, overtime pay, nonpayment of spread of hours, unlawful withholding of wages, as well as failure to provide the required wage notice at the time of hiring and the required wage statement with every payment of

wages would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

*Plaintiff Lei Gao*

34.    From in or around September 2016 to on or around October 30, 2018, Plaintiff Gao was employed as a nail technician in Defendants' nail salon located at located at 236 E. Route 59, Nanuet, New York 10954.

35.    Upon information and belief, Defendant Xu, known as "Boss" to Plaintiffs, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

36.    Upon information and belief, Defendant Gou, known as "Lady Boss" to Plaintiffs Gao, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

37.    Defendants Gou and Xu hired Plaintiff Gao as a nail technician for Defendant Corporation.

38.    Defendants Gou and Xu controlled and determined the work schedule of Plaintiff Gao.

39.    Defendants Gou and Xu determined the rates of compensation of Plaintiff Gao, and methods of payment.

40.    Defendants Gou and Xu handled wage payments to Plaintiff Gao and maintained his employment records.

41.    Plaintiff Gao was not provided a written wage notice, in English or in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

42.    Throughout his employment with Defendants, Plaintiff Gao would take the company shuttle provided by Defendants at around 8:20 am in Flushing and arrive at Defendants' nail salon at or before 9:30 am, then take the company shuttle back to Flushing after the workday concludes. From in or around February 2017 to in or around June 2018, Plaintiff was also required by Defendants to drive the company shuttle on each Monday to pick up/drop-off Defendants' employees.

43.    From in or around September 2016 to in or around January 2017, Plaintiff Gao worked 6 days per week and on each of his workday he worked without a break from 9:30 am to around 7:40 pm, which is his official work time. However, 5 days out of the 6 workdays he was required to stay late for another 30 to 40 minutes. Plaintiff Gao therefore worked around 10.17 hours a day, or 64.32 hours per week during this period of time. Plaintiff Gao is therefore entitled to the spread of hours premium for this period of time.

44.    From in or around February 2017 to in or around June 2018, Plaintiff Gao worked 6 days per week. On each Monday (the day Plaintiff was also required to drive) starting 8:20 am, Plaintiff Gao would pick up Defendants' employees from Flushing, Queens and arrive at Defendants' nail salon at or before 9:30 am, then worked without a break from 9:30 am to around 7:40pm, and thereafter drove Defendants' employees back to Flushing. 8:30 pm is usually the time

when the last employee was dropped off. On other workdays of a week, Plaintiff Gao's official

working time was from 9:30 am to around 7:40 pm with no break. However, 5 days out of 6 he

would stay late at work for another 30 to 40 minutes. Plaintiff Gao therefore worked 12.17 hours

on Mondays and 10.17 hours on other workdays (or 63.02 hours per week) during this period of

time. Plaintiff Gao is therefore entitled to the spread of hours premium for this period of time.

45.     From in or around July 2018 to on or around October 30, 2018, Plaintiff Gao

worked 6 days per week and on each of his workday Plaintiff Gao worked without a break from

9:30 am to around 7:40 pm (often until 8:00pm). Plaintiff therefore worked at least 10.17 hours

per day, or 61.02 hours per week during this period of time. Plaintiff Gao is therefore entitled to

the spread of hours premium for this period of time.

46.     During the year of 2016, Plaintiff Gao was paid at a fixed rate $120.00 per day plus

commission averaged at $25 per day, regardless the number of hours he actually worked each day.

47.     During the year of 2017, Plaintiff Gao was paid at a fixed rate $125.00 per day plus

commission averaged at $25 per day, regardless the number of hours he actually worked each day.

48.     From January 1, 2018 to October 30, 2018, Plaintiff Gao was paid at a fixed rate

$130.00 per day plus commission averaged at $25 per day, regardless the number of hours he

actually worked each day.

49.     Throughout his employment with Defendants, Plaintiff Gao was paid weekly

through a combination of both cash and check, with $200 by check and the rest amount in cash.

50.     Throughout his employment with Defendants, Plaintiff Gao was not required to

punch time or otherwise track his work hours. Nevertheless, Defendants required their employees,

including Plaintiff Gao, to make up fake time-records, about every half year. Those time-records

do not reflect the hours actually worked by employees, including Plaintiff Gao. For instance,

Plaintiff Gao's time records usually state that he worked three days per week, whereas in fact Plaintiff Gao worked 6 days per week.

51.     Throughout his employment with Defendants, Plaintiff Gao was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws, nor was Plaintiff Gao compensated for spread of hours pay on the days when his spread of hours exceeds ten.

52.     Throughout his employment with Defendants, Plaintiff Gao was not overtime-exempt under federal and state laws.

53.     Defendants did not provide Plaintiff Gao with a correct wage statement (pay stub) with every wage payment.

54.     Defendants failed to pay Plaintiff his wage (in the amount of $130) for his last day at work, i.e., October 30, 2018.

***Plaintiff Wen Tao Liu***

55.     From in or around April 2017 to in or around July 2018, Plaintiff Liu was employed as a nail technician in Defendants' nail salon located at located at 236 E. Route 59, Nanuet, New York 10954.

56.     Defendants Gou and Xu hired Plaintiff Liu as a nail technician for Defendant Corporation.

57.     Defendants Gou and Xu controlled and determined Plaintiff Gao's work schedule.

58.     Defendants Gou and Xu determined the rates of compensation of Plaintiff Liu, and methods of payment.

59.     Defendants Gou and Xu handled wage payments to Plaintiff Liu and maintained his employment records.

60.     Plaintiff Liu was not provided a written wage notice, in English or in Chinese (the primary language identified by Plaintiff) during his employment, including, without limitation, information about his pay rate and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

61.     Throughout his employment with Defendants, Plaintiff Liu would take the company shuttle provided by Defendants at around 8:20 am in Flushing and arrive at Defendants' nail salon at or before 9:30 am, then take the company shuttle back to Flushing after work.

62.     From in or around April 2017 to in or around July 2018, Plaintiff Liu worked 6 days per week. Plaintiff Liu would take one day off from Monday to Saturday and work on Sundays. From Monday to Saturday, Plaintiff Liu took the company shuttle at 8:20 am and arrived at the company before 9:30 am. Then he worked without a break until 7:30pm, the official time when Defendants closed their business. Then most of the time (5 days out of 6 days a week) Plaintiff Liu had to stay for another 30 to 40 minutes to finish his work. Plaintiff Liu therefore worked at least 10 hours and most of time 10.5 hours a day from Monday to Saturday. Plaintiff Liu is therefore entitled to the spread of hours premium for 5 days every week for this period of time.

63.     Plaintiff Liu would take one day off on the weekend. And on the day that he worked, he would take the company shuttle at 9 am and arrived the company before 10 am. Defendants' business closed at 6pm on Sundays and sometimes Plaintiff Liu had to stay another 30 to 40 minutes to finish his work.

64.     Therefore, during this period of time, Plaintiff Liu worked 5 days from Monday to Saturday, approximately 10.5 hours each day, and about 8 hours on Sundays. Thus, Plaintiff Liu worked approximately 60.5 hours per week.

65.     From April 2017 to May 2018, because Plaintiff Liu was only an assistant to other manicure and pedicure workers in Kerry Nail SPA, he was paid $75 per day.

66.     From May 2018 to July 2018, Plaintiff Liu was paid $80 per day.

67.     Throughout his employment with Defendants, Plaintiff Liu's salary was paid weekly, all in cash in an envelope bearing his name. No pay stub (wage statement) was in there.

68.     Throughout his employment with Defendants, Plaintiff Liu was never required to punch time or otherwise track his work hours. Nevertheless, Plaintiff Liu also claimed that Defendants required their employees to make up fake time-records, once in about half a year. Plaintiff Liu was told by Defendants that those timecards were made for tax purposes. Defendants filed tax reports for him as a part-time employee and therefore asked Plaintiff Liu and other employees to make up time records accordingly. Thus, time-records obtained by Defendants do not reflect the hours actually worked by employees, including Plaintiff Liu. For instance, Plaintiff Liu's time records usually state that he worked three days per week, whereas in fact he worked 6 days per week and was a full-time employee.

69.     Throughout his employment with Defendants, Plaintiff Liu was compensated in the amount less than the minimum wage for the hours he worked according to both the FLSA and the NYLL.

70.     Throughout his employment with Defendants, Plaintiff Liu was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws, nor was he compensated for spread of hours pay on the days when his spread of hours exceeds ten.

71.     Throughout his employment with Defendants, Plaintiff Liu was not overtime-exempt under federal and state laws.

72.    Defendants did not provide Plaintiff Liu with any wage statement (pay stub) with his wage payments.

***Plaintiff Shuai Sun***

73.    From April 30, 2017 to May 5, 2018, Plaintiff Sun was employed as a nail technician in Defendants' nail salon located at located at 236 E. Route 59, Nanuet, New York 10954.

74.    Defendants Gou and Xu hired Plaintiff Sun as a nail technician for Defendants' nail salon.

75.    Defendants Gou and Xu controlled and determined Plaintiff Sun's work schedule.

76.    Defendants Gou and Xu determined the rates of compensation of Plaintiff Sun and methods of payment.

77.    Defendants Gou and Xu handled wage payments to Plaintiff Sun and maintained his employment records.

78.    Plaintiff Sun was not provided a written wage notice, in English or in Chinese (the primary language identified by Plaintiff) when he was first hired by Defendants, including, without limitation, information about his pay rate and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

79.    Throughout his employment with Defendants, Plaintiff Sun would take the company shuttle provided by Defendants at around 8:20 am in Flushing and arrive at Defendants' nail salon at or before 9:30 am, then take the company shuttle back to Flushing after work.

80.    During his employment at Defendants', Plaintiff Sun worked 5 days per week, with Monday and Wednesday as his regular off days. Plaintiff Sun took the company shuttle at 8:20 am and arrived at Kerry Nails before 9:30 am. Then he worked without a break until 7:30pm, the

official time when Defendants closed their business. Nonetheless, most of the time,  Plaintiff Sun had to stay for another 30 to 40 minutes to finish his work. Plaintiff Liu therefore worked at least 10 hours and most of time 10.5 hours a day during a workweek. Plaintiff Sun is therefore entitled to the spread of hours premium for 5 days every week.

81.    Plaintiff Sun was paid a fixed daily rate of $120 regardless of actual hours worked.

82.    Throughout his employment with Defendants, Plaintiff Sun's salary was paid weekly, in a combination of cash and check.

83.    Throughout his employment with Defendants, Plaintiff Sun was never required to punch time or otherwise track his work hours. Nevertheless, Plaintiff Sun also claimed that Defendants required their employees to make up fake time-records, once in about half a year. Plaintiff Liu was told by Defendants that those timecards were made for tax purposes. Defendants filed tax reports for him as a part-time employee and therefore asked Plaintiff Sun and other employees to make up time records accordingly. Thus, time-records obtained by Defendants do not reflect the hours actually worked by employees, including Plaintiff Liu. For instance, Plaintiff Liu's time records usually state that he worked three days per week, whereas in fact he worked 6 days per week and was a full-time employee.

84.    Throughout his employment with Defendants, Plaintiff Sun was compensated in the amount less than the minimum wage for the hours he worked according to both the FLSA and the NYLL.

85.    Throughout his employment with Defendants, Plaintiff Sun was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws, nor was he compensated for spread of hours pay on the days when his spread of hours exceeds ten.

86.     Throughout his employment with Defendants, Plaintiff Sun was not overtime-exempt under federal and state laws.

87.     Defendants did not provide Plaintiff Sun with any wage statement (pay stub) with his wage payments.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violation of New York Labor Law—Minimum Wages
Brought on behalf of Plaintiff Liu]**

88.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.     Because Defendants' business has more than 10 employees, it was considered as a large employer under the New York Codes, Rules and Regulations (hereinafter "N.Y.C.R.R.").

90.     At all relevant times to this action, Plaintiff Liu was an employee of Defendants, and Defendants were employers of Plaintiff within the meaning of §§ 2 and 651 of the NYLL and the supporting New York State Department of Labor Regulations.

91.     As set forth herein, Defendants regularly and routinely failed to pay the Plaintiff Liu at the applicable minimum hourly wage in violation of the New York Minimum Wage Act, Article 19 of the NYLL.

92.     Defendants willfully failed to pay the Plaintiff at the applicable minimum hourly wage in violation of the New York Minimum Wage Act, Article 19 of the NYLL, specifically NYLL § 652, and the supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §142-2.1.

93.     As a result of Defendants' unlawful practices, Plaintiff Liu has suffered a loss of wages. As a result of Defendants' violations of the NYLL and the supporting Regulations

promulgated therein, Plaintiff Liu has incurred harm and loss in an amount to be determined at trial and is entitled to recover from Defendants his unpaid minimum wages as provided for by the NYLL, in addition to liquidated damages, reasonable attorneys' fees, cost, and pre-judgment and pos-judgment interest.

94.     Defendants' failure to pay Plaintiff Liu minimum hourly wages was not in good faith.

## COUNT II.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiffs and the FLSA Collective]

95.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

96.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

97.     The FLSA and supporting regulations provides that, commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission." 29 C.F.R. § 778.117.

98.     The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard. 29 C.F.R. § 778.118.

99.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

100.    Here, Plaintiffs alleged that each of them worked over 40 hours in any workweek while Plaintiffs were all paid at a fixed daily rate regardless of the number of hours they actually worked. Therefore, Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime premiums violated the FLSA.

101.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

102.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

103.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

104.    Defendants knowingly and willfully disregarded the provisions of  the  FLSA  as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT III.**

**[Violation of New York Labor Law—Overtime Pay
Brought on behalf of Plaintiffs]**

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106.    The Miscellaneous Industries Wage Order, 12 N.Y. C.R.R. § 142-2.2, provides that, An employer shall pay an employee for overtime in excess of forty hours per week at a wage rate of one and one-half times the employee's regular rate, or minimum wage, whichever is greater.

107.    Here, as discussed above, Plaintiffs were paid at  fixed daily rates regardless of the number of hours they actually worked over 40 hours per week. Defendants' failure to pay Plaintiff was not in good faith.

108.    Therefore, Defendants' failure to pay Plaintiffs their overtime premiums violated the N.Y.C.R.R.

109.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

110.    Defendants' failure to pay Plaintiff his overtime premiums violated the Miscellaneous Industries Wage Order.

**COUNT IV.
[Violation of New York Labor Law—Spread of Hours
Brought on behalf of Plaintiffs]**

111.    The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 NYCRR § 137-1.7, 12 NYCRR 146-1.6 (effective 1/1/2011, formerly 12 NYCRR § 137-1.7), New York State Department of Labor Regulations § 137-1.7 provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in

which the employee's spread of hours exceeds ten. This "spread of hours" regulation is applicable even if there is a split shift.

112.    Here, throughout their employment with Defendants, Plaintiffs routinely worked a "spread of hours" of more than 10 hours per day. Defendants' regular business hours were from 9:30am to 7:30pm, which was 10 hours, without mentioning that Plaintiffs had to get to the work place before 9:30am and stay late finishing up their work after the business hours for most of times, for example, when the customer came around 7:30pm.

113.    Even though Plaintiffs routinely worked a "spread of hours" greater than ten hours per day throughout their employment with Defendants, Defendants did not pay Plaintiffs any additional compensation as required by the regulations.

114.    Defendants' failure to pay spread of hours compensation was willful and intentional.

## COUNT V.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on Behalf of Plaintiffs]

115.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

116.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

117.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

118.    Defendants not only did not provide notice to each employee at Time of Hire but also failed to provide notice to Plaintiffs thereafter.

119.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on Behalf of Plaintiffs]

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

122.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of Plaintiffs and did not provide the paystub on or after Plaintiffs' payday.

123.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for Plaintiffs together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VII.
### [Violation of New York Labor Law —Failure to Pay Wages]

124.    Plaintiff Gao repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

125.    Under NYLL §191, an employer is required to pay an employee within one week of the services performed by the employee.

126.    Defendants did not pay Plaintiff Gao $130 for his last day at work. Therefore, Plaintiffs' failure to pay Plaintiff Gao his last-day wage violates NYLL §191.

127.    Therefore, Plaintiff Gao is entitled to an award of unpaid daily wage for his last day at work.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, respectfully request that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, and NYCRR;

e)    An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    Award Plaintiffs unpaid wages, unpaid minimum wages, unpaid overtime, and unpaid spread of hours due under the FLSA and the New York Labor Law;

g)    Award Plaintiffs liquidated damages under the FLSA or the NYLL;

h)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL;

i)    The cost and disbursements of this action;

j)    An award of prejudgment and post-judgment fees; and

k)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
September  11, 2019

Respectfully Submitted,

HANG & ASSOCIATES, PLLC

By: /s/__*Ge Qu*_____
He Qu, Esq.
136-20 38th Ave. Suite 10G
Flushing, NY 11354
Tel: (718) 353-8588
Fax: (718) 353-6288
Email: rqu@hanglaw.com
*Attorneys for Plaintiffs and Proposed FLSA*
 *Collective*

# EXHIBIT A

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Kerry Nails Salon Corp. d/b/a Kerry Nail Spa and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid overtime and minimum wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Wen tao Liu_
Full Legal Name (Print)

_[signature]_
Signature

_8. 1. 20/9_
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Kerry Nail Spa, Tiemin Xu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Sun Shuai

Full Legal Name (Print)

Sun Shuai

Signature

7/31/2019

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Kerry Nail Spa, Tiemin Xu and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Lei Gao*

Full Legal Name (Print)

*Lei Gao*

Signature

11-8-2018

Date