USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/22/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LEI GAO, individually and on behalf of all
others similarly situated,

                           Plaintiff,

          -against-

KERRY NAILS SALON CORPORATION,
XUE GOU, and TIE MING XU,

                       Defendants.
----------------------------------------------------------------X

18-CV-10448 (PGG) (KHP)

**REPORT & RECOMMENDATION
ON DEFENDANT'S LIMITED
MOTION FOR SUMMARY
JUDGMENT**

TO:      THE HONORABLE PAUL G. GARDEPHE, United States District Judge
FROM:  KATHARINE H. PARKER, United States Magistrate Judge

       On November 9, 2018, Plaintiff Lei Gao brought this action, on behalf of himself and all others similarly situated, alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.*, and supporting New York State Department of Labor Regulations. (Compl. ¶¶ 1-4, ECF No. 1.) The Defendants in this case are Kerry Nails Salon Corporation (d/b/a Kerry Nails Spa) ("Kerry Nails Spa"), and Xue Gou and Tie Ming Xu, co-owners and managers of Kerry Nails Spa. (*Id.* ¶¶ 9-20.) Plaintiff Gao amended his complaint roughly ten months after initiating the suit to include two colleagues, Plaintiffs Wen Tao Liu and Shuai Sun. (*See* Am. Compl., ECF No. 36.)

       In their amended complaint, Plaintiffs assert five collective claims. First, Plaintiffs claim Defendants violated the overtime provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay Plaintiffs overtime wages earned. (*Id.* ¶¶ 95-104.) Second, Plaintiffs claim Defendants violated the overtime provisions of the NYLL and the New York Wage Theft Prevention Act by failing to pay Plaintiffs overtime wages earned. (*Id.* ¶¶ 105-10.) Third, Plaintiffs claim

Defendants violated the spread of hours provisions under New York Code Rules & Regulation ("NYCRR") §§ 137-1.2 & 146-1.6, and New York State Department of Labor Regulation § 137-1.7 by failing to pay the appropriate spread of hours wages to Plaintiffs on days when they worked more than ten hours. (*Id.* ¶¶ 111-14.) Fourth, Plaintiffs claim Defendants violated NYLL § 195-1(a) by failing to provide Plaintiffs with compliant wage notices. (*Id.* ¶¶ 115-19.) Fifth, Plaintiffs claim the same violation with respect to pay stub notice requirements under NYLL § 195-1(d). (*Id.* ¶¶ 120-23.) Plaintiff Liu additionally asserts a claim for failure to pay minimum wage in violation of NYLL § 652 and its the supporting regulations under NYCRR §142-2.1 (*id.* ¶¶ 88-94) and Plaintiff Gao claims Defendants violated NYLL § 191 by failing to pay him for his last day worked in the amount of $130. (*Id.* ¶¶ 124-27.)

Before this Court is Defendants' motion for summary judgment, limited to the sole issue of whether Plaintiffs' are entitled to enterprise coverage under the FLSA by Kerry Nails Spa. (Order, ECF No. 42; Defs.' Mot. for Summ. J., ECF No. 50.) For the reasons stated below, I respectfully recommend that Defendants' motion be denied.

## BACKGROUND

I.   **Factual Background**[1]

Kerry Nails Spa is a business organized under the laws of New York State with its sole location on Route 59 in Nanuet, New York. (Am. Compl. ¶ 9.) Plaintiff Gao worked for Kerry Nails as a nail technician, providing manicure and pedicure services to customers, for portions of the 2016 and 2018 fiscal years, and all of the 2017 fiscal year. (Defs.' L. R. 56.1 Statement ¶ 3a-b, ECF No. 50-1.) In addition, for part of his employment, Plaintiff Gao also operated a

---

[1] The following facts are undisputed, except as noted.

shuttle bus in which he transported several employees of Kerry Nails Spa from Queens to Nanuet.  (Gao Affidavit ¶¶ 7, 9, ECF No. 54.)  Plaintiff Liu worked for Kerry Nails during the 2017 and part of the 2018 fiscal years.  (Defs.' L. R. 56.1 Statement ¶ 3c-d.)  Plaintiff Liu worked as amanicure and pedicure assistant, meaning that Liu assisted the nail technician to provide manicure and pedicure services to the customers.  (*Id.*)  Plaintiff Sun worked for Kerry Nails during the parts of the 2016 and 2018 fiscal years, and all of 2017.  (*Id.* ¶ 3e-f.)  Plaintiff Sun was a nail technician, like Gao, meaning she provided manicure and pedicure services to customers.

Defendants provided unsigned tax returns (IRS Forms 1120) to evidence their gross annual revenue as falling below the $500,000 enterprise coverage threshold.  Defendants' tax returns indicate gross revenues in 2016, 2017, and 2018, as, respectively $356,004, $406,765, and $212,883.  (Forms 1120, ECF No. 50-6.)  During summary judgment briefing, Plaintiffs' attempted to rebut Defendants' tax returns by offering the sworn testimony of two named Plaintiffs.  (ECF Nos. 54 & 55.)  These two affidavits provide the two Plaintiffs' estimates as to how much they worked, how busy Kerry Nails Spa was, what was charged for certain services, and other information related to customer spending and volume.  Plaintiffs also offered an attorneys' affidavit submitting that Defendants' own handwritten payroll records indicate that the tax forms are inaccurate.  (ECF No. 56.)  In reply, Defendants offered an affidavit from their certified public accountant to support the authenticity and reliability of the tax returns.

II.     **Procedural History**

Plaintiff Gao initiated this lawsuit in November 2018.  In September 2019, Plaintiffs Sun and Liu joined the Plaintiff.  Defendants answered the amended complaint in October 2019.  (ECF No. 37.)  In February 2020, the Court held a status conference in which the Defendants

raised the threshold issue of whether Kerry Nails Spa was an entity owing FLSA coverage to Plaintiffs.  (ECF Nos. 41 & 42.)  Following that conference, the parties jointly filed a status letter indicating to the Court that a resolution could not be reached regarding whether FLSA coverage existed for Plaintiffs.  (ECF No. 44.)  As a result, the Court ordered the parties to propose a briefing schedule, to the extent either party sought to move for summary judgment, on the limited issue of FLSA the threshold amount for enterprise coverage under the FLSA.  (Order, ECF No. 45; Defs.' Mot. for Summ. J., ECF No. 50.)  On May 1, 2020, Defendants moved for limited summary judgment solely on the issue of Defendants' failure to meet the necessary $500,000 threshold for enterprise coverage to apply to Plaintiffs.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court is required to resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.  (*Id.* at 255.)  However, the opposing party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). In sum, if the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'" and summary judgment is warranted. *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### I. FLSA Coverage and Legal Standards

An employee is entitled to the protections of the FLSA's minimum wage and overtime requirements if that employee was (i) "engaged in commerce or in the production of goods for commerce," or (ii) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a), 207(a)(1); *see Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *20 (S.D.N.Y. June 9, 2016). These two categories are often referred to, respectively, as individual and enterprise coverage. *See Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam). These inquiries, while both threshold issues, are both questions addressed to the merits of the litigation, and are not jurisdictional in nature, meaning that they need not be *proven* by Plaintiff until trial. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *Monterossa v. Martinez Rest. Corp.*, No. 11-cv-3689 (JMF), 2012 WL 3890212, at *3 (S.D.N.Y. Sept. 7, 2012). Here, Defendant argues it does not meet the enterprise coverage requirements.

Under the FLSA, an "enterprise engaged in commerce" is an enterprise that: (i) "has employees handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce" and (ii) "whose annual gross volume of sales made or business done is

5

not less than $500,000." 29 U.S.C. § 203(s)(1).  The first prong of the enterprise test presents a low bar for a litigant to clear, and it is not difficult to establish that goods were moved in interstate commerce, even when an employer's sales, regardless of the product or service being sold, are exclusively local.  *See Jacobs*, 577 F.3d at 99 n.7 (quoting 29 U.S.C. § 203(s)(1)(A)(i)); *Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, No. 15-cv-2520 (JPO), 2015 WL 3473510, at *4 (S.D.N.Y. June 2, 2015).  The second prong's threshold value, while rigid, can be proven through various means, including through testimony and documentary evidence, such as tax forms and bank receipts.  *See, e.g.*, *Rocha v. Bakhter Afghan Halal Kababs*, Inc., 44 F. Supp. 3d 337, 348-50 (E.D.N.Y. 2014); *Rosso v. PI Mgmt. Assocs., L.L.C.*, No. 02-cv-1702 (KNF), 2005 WL 3535060, at *7-8 (S.D.N.Y. Dec. 23, 2005).

## II.     FLSA as Applied to Defendants

Here, Defendants dispute that Plaintiffs can meet either prong of the enterprise coverage test.  Regarding the first prong—whether the employees of Kerry Nails Spa handled, sold, or worked with goods or materials that have been in interstate commerce—Defendants argue that Kerry Nails Spa serviced entirely local customers and that its employees, who provided manicure and pedicure services, did not work with interstate commerce goods or materials.  Defendants argue that the true test to determine if an employee operates in interstate commerce focuses on the realities of the activities and not on whether the employee's activities indirectly related to interstate commerce.  (Motion ¶ 18, ECF No. 50 (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).)  However, the case on which Defendants relied relies on outdated precedent interpreting the FLSA as originally drafted and prior to amendments expanding the law's reach to cover entities like a nail salon.  *See* Fair Labor

Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat 55, § 6(A)(5) (amending § 3(s) of the Fair Labor Standards Act of 1938); *see also Archie*, 997 F. Supp. at 530. (discussing the Senate Report on the 1974 amendments to the FLSA, noting that courts often discuss this Report, which indicates the amendments, that importantly added the phrase "or materials" to the first prong of the enterprise coverage definition, were intended to capture "the soap used by a laundry"). Case law interpreting the amended statute makes clear that the interstate commerce aspect of the enterprise coverage test is quite easy to meet, and in fact, courts in this Circuit have found an employee of an enterprise to have been engaged in interstate commerce when that employee's activities were purely local and no goods were produced by the enterprise. *See Mei Chun Poon v. Apple NYC Corp.*, No. 17-cv-9647 (RA) (GWG), 2019 WL 75674, at *2 (S.D.N.Y. Jan. 2, 2019) (finding a nail spa to be engaged in interstate commerce); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 88-89 (E.D.N.Y. 2010) (finding an employee's consumption of cleaning products, which were purchased locally but had been in interstate commerce, while working for defendant, to constitute interstate commerce); *Boekemeier v. Fourth Universalist Soc'y in the City of New York*, 86 F. Supp. 2d 280, (S.D.N.Y.2000) (janitor using cleaning equipment satisfied first prong of enterprise coverage); *Archie v. Grand Cent. P'ship*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (holding that sanitation materials such as bags, brooms, shovels, and pails used by sanitation workers had moved in interstate commerce and thus, the employee's had enterprise coverage). There is no reason why the materials nail salon employees handle, such as nail polish and nail polish remover, should be viewed any differently than cleaning supplies for a janitor or sanitation supplies for a sanitation worked or soap for a laundromat, even when the business serves purely local

clientele. As such, Defendants' argument that Kerry Nails Spa's employees were not engaged in interstate commerce fails.

Turning to the second prong of enterprise coverage, in view of the parties' arguments and the current record, genuine disputes of material fact exist as to whether Defendants meet the $500,000 threshold. Defendants, as the moving party, rely almost exclusively on Kerry Nails Spa's Form 1120s, seemingly filed with the Internal Revenue Service,[2] for the years of 2016, 2017, and 2018, in arguing that Kerry Nails Spa did not reach the $500,000 threshold in any of the three years in which Plaintiffs allege Defendants violated the FLSA's wage and overtime provisions. These forms show that Kerry Nails Spa grossed $356,004, $406,765, and $212,883, respectively, during those three years. (Form 1120s, ECF 50-6.) Tax forms, however, are not presumptively reliable or authentic, and may be shown to be incredible or unreliable by a plaintiff. *See e.g.*, *Shen v. John Doe Corp.*, No. 16-cv-2015 (GBD) (JCF), 2016 WL 7217850, at *4 (S.D.N.Y. Dec. 13, 2016) ("[t]here is substantial precedent suggesting that tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff."), *report and recommendation adopted*, 2017 WL 111746 (S.D.N.Y. Jan. 11, 2017); *Monterossa v. Martinez Rest. Corp.*, No. 11-cv-3689 (JMF), 2012 WL 3890212, at *3-4 (S.D.N.Y. Sept. 7, 2012).

Plaintiffs point to the total wages paid to the employees to argue that the tax forms are not accurate. They also submit affidavits regarding the costs of the services and number of customers per week on average to challenge the accuracy of the tax forms.

Defendants' 2017 Form 1120, at line 13 of the form, indicates that Kerry Nails Spa paid $70,264 in salaries and wages for their 2017 fiscal year. (2017 Form 1120, ECF No. 50-6 at 7.)

---

[2] The forms do not bear the signature of either individual Defendant or any other officer of Kerry Nails Spa.

This same form indicates that the 2017 fiscal year[3] for Kerry Nails Spa saw gross receipts or sales of $406,765.  Plaintiffs argue that the reported wages are not accurate insofar as Defendants' own hand-written payroll records demonstrate that Kerry Nails Spa paid far more than $70,264 in wages.  (*See* Affirmation of Ge Qu dated June 12, 2020, ECF No. 56.)  These records show that Kerry Nails Spa paid out $233,242 in salaries and wages in fiscal year 2017.  (*Id.* ¶ 5.)  Plaintiff Lei "Tony" Gao states in his affidavit that he was paid $37,440[4] for the 2017 fiscal year (see Affidavit of Lei Gao dated June 10, 2020, ECF No. 54 ("Gao Affidavit")), and Plaintiff Shui "Sam" Sun attests she was paid $31,200[5] for the same year.  (*See* Affidavit of Shui Sun dated June 10, 2020, ECF No. 55 ("Sun Affidavit").)  Adding these two figures together results in an estimate that, between these two employees alone, Kerry Nails Spa paid $68,600 in wages for the 2017 fiscal year.  This means that for the 2017 Form 1120's salary figure to be accurate, Kerry Nails Spa paid the remainder of its employees only $1,664 for the year.  According to Defendants, the spa employed 4 to 7 people per day.  (Affidavit of Xue Gou dated July 2, 2020 at ¶ 4(h), ECF No. 60-1 ("Gou Affidavit").)  It is reasonable to infer that the other employees in the aggregate earned far more than $1,664 in fiscal year 2017.  Thus, the evidence indicates there is a genuine dispute as to the accuracy of the 2017 tax statement and evidence suggesting the revenue was far higher than reported.  When tax returns are inconsistent with a defendant's own records, "specifically, a handwritten log maintained by [a

---

[3] According to Defendant's Form 1120, the 2017 fiscal year for Kerry Nails Spa runs from June 1, 2017 through May 31, 2018.  (2017 Form 1120, ECF No. 50-6 at 7.)
[4] This number was calculated by using Gao's lowest daily fixed salary ($120), multiplying it by the six days he stated he worked per week, across fifty-two weeks in a year.
[5] This number was calculated by using Sun's lowest daily fixed salary ($120), multiplying it by the five days she stated she worked per week, across fifty-two weeks in a year.

defendant]," a sufficient dispute of material fact regarding the enterprise coverage threshold can be created.  *See Monterossa*, 2012 WL 3890212 at *3.

To be sure, the self-serving testimony of plaintiffs should not automatically be credited; evidence, at the summary judgment stage, offered to create a genuine dispute, must be "concrete" and "affirmative."  *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 304 (E.D.N.Y. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Xi Dong Gao v. Golden Garden Chinese Rest.*, Inc., No. 13-cv-4761 (LDW) (GRB), 2014 WL 8843301, at *7 (E.D.N.Y. Dec. 16, 2014).  For example, in *Golden Garden*, the court discredited plaintiff's testimony that the defendant restaurant grossed far more than the amount reported on defendant's tax forms and exceeded the $500,000 threshold.  The plaintiff in *Golden Garden* based his testimony on his "discussions with previous bosses at previous restaurants where he became aware of purported policies and practices of all Chinese restaurants."  2014 WL 8843301 at *3.  Because the information was not based on credible personal knowledge and was more akin to "mere guesses," the court held that plaintiff failed to satisfy the *Liberty Lobby* standard requiring affirmative and concrete evidence.  *Id.* at *7.  Conversely, when testimony from a plaintiff estimating the gross revenue of the defendant-employer is based on personal knowledge and clearly more than mere speculation, and the tax returns at issue are not signed, a plaintiff can successfully raise questions regarding the reliability of a tax return.  *See Shen*, 2016 WL 7217850 at *3-4.  This was the case in *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, where the plaintiff successfully challenged the defendant's tax returns that showed gross revenue below the $500,000 threshold by providing sworn statements containing estimates of the hours and days worked per week, the amount earned per week, and the number of full-

10

time employees. 44 F. Supp. 3d 337, 348-49 (E.D.N.Y. 2014). The court held that such sworn testimony was sufficient to raise a genuine issue of material fact with respect to the reliability of the tax forms and whether enterprise coverage existed. *Id.*

Here, Plaintiffs Gao and Sun's sworn statements are based on their own personal knowledge and go beyond mere conjecture and guesses. The affidavits are consistent with each other and based on the personal knowledge of days and hours worked per week at the spa. The affiants' statements about the number of customers serviced each day is less reliable, but arguably based on personal knowledge and observation as well. (*See* Gao Affidavit ¶ 11; Sun Affidavit ¶ 12.) Plaintiffs estimate that the spa's annual revenues were between approximately $766,500 and $1,022,000 based on the number of customers serviced each day times the average amount spent by each customer, which they estimate was between $30 and $40 dollars. (Opposition at 8, ECF No. 57.) Although Defendants dispute the costs of certain services (which impacts the average amount spent by a customer), the customers in the store per day (2-3 or 8-10, depending on the season, instead of 10 on average), and the amount of employees working per day (4-7 normally with more on the weekends, but never reaching the claimed 15 on the weekends) (Gou Affidavit ¶¶ 4-5), these factual disputes cannot be resolved on this motion, especially given that the evidence must be viewed in the light most favorable to the non-moving party on a motion for summary judgment.

## CONCLUSION

For all of the above reasons, there are genuine issues of material fact regarding the spa's annual revenues. Thus, I recommend that Defendants' motion for summary judgment be denied.

**SO ORDERED.**

Dated: New York, New York
September 22, 2020

*/s/ Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge

## **NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If Plaintiffs file written objections to this Report and Recommendation, the Defendants may respond to Plaintiffs' objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Alternatively, if Defendants file written objections, Plaintiffs may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Gardephe.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**